STATE OF OKLAHOMA ⎱ S.S.
CLEVELAND COUNTY ⎰

**IN THE DISTRICT COURT OF CLEVELAND COUNTY**
**STATE OF OKLAHOMA**

**FILED**

OCT. 10 2013

MARY BRUEHL,                          )

　　　　　　　Plaintiff,              )

v.                                    )

STATE OF OKLAHOMA, ex rel., THE       )
OKLAHOMA INDIGENT DEFENSE SYSTEM      )

　　　　　　　Defendant.              )

In The Office of the
Court Clerk RHONDA HALL

Case No. CJ.2013.1281 TS

## PETITION

Plaintiff Mary Bruehl ("Bruehl" or "Plaintiff"), for her causes of actions against Defendant State of Oklahoma, ex rel., the Oklahoma Indigent Defense System ("Defendant"), alleges and states:

### The Parties

1.　　At all relevant times, Bruehl was and now is a resident of the City of Norman, Cleveland County, State of Oklahoma.

2.　　At all relevant times, Defendant was and now is a statutory agency of the State of Oklahoma, operating in multiple counties within the State, including Cleveland County.　Defendant provides trial, appellate and post-conviction criminal defense services to persons who have been judicially determined to be entitled to legal counsel at State expense.



EXHIBIT
2

<u>Jurisdiction and Venue</u>

3.      This action is brought pursuant to 42 U.S.C. § 2000e, et seq., and 25 O.S. §

1350, over which this Court has jurisdiction, and venue is proper pursuant to 12 O.S. §

134 in that the cause of action arose in Cleveland County, State of Oklahoma.

<u>Fact Allegations</u>

4.      Bruehl had been employed with Defendant for twelve (12) years, and in

2012 was working as an attorney in the Capital Trial Division, located in Norman,

Oklahoma.

5.      Throughout her employment, Bruehl noticed a long history of poor

treatment and discrimination toward women in the capital trial division, as well as

inappropriate comments being made in a derogatory fashion against women.

6.      Prior to becoming the Chief of the Norman Capital Trial Division, Gary

Henry ("Henry"), made improper sexual comments to Bruehl in front of a client and to

another female attorney.  He had also verbally assaulted Bruehl on one (1) occasion

prior to him becoming chief.  Bruehl filed an informal grievance with her immediate

supervisor against Henry because of his harassing comments and behavior, but she is

unaware that any discipline was taken against him.

7.      Several female attorneys transferred to different divisions because their

male supervisors and colleagues treated them unfairly and showed favoritism towards

other male employees at their expense.

8.     In February 2012, the Capital Trial Division staff was reduced from six (6) attorneys to three (3), allegedly because of budget constraints.  Henry was made Deputy Division Chief, and Bobby Lewis ("Bobby Lewis") and Bruehl were the attorneys.  Chris Lewis ("Chris Lewis") and John Milus ("Milus") were the remaining investigators and Ginny Brown ("Brown") was the administrative assistant.  Two out of the three employees terminated were females, including attorney Vicki Floyd ("Floyd").

9.     Henry bragged about having input into which attorneys stayed and which ones were terminated or transferred.  He often indicated that part of the reason he recommended that Floyd be terminated was because of his impression of her personal life.  He commented that she was only interested in having a boyfriend and having sex, and he held it against her that she was a woman who allegedly slept with different men.

10.     The reduction in staff was detrimental to the operation of the office, and the office was turned into something of a triage unit – putting out fires and settling as many cases as possible.  In fact, at one point during the Summer of 2012, Bruehl commented to Henry that the lack of attorneys and investigators in the division was leading to ineffective assistance of counsel.  Henry reacted angrily and denied that there was any possibility of that.

11.     Bruehl was consistently paid less than other male attorneys.  For example, Lynn Burch ("Burch") was a male attorney with similar experience to Bruehl, and he was consistently paid at least $5,000.00 to $10,000.00 more than Bruehl.  Also, Bobby Lewis

3

had only seven (7) years of experience as an attorney, compared to Bruehl's approximate twenty (20) years, yet Bobby Lewis was paid at a higher comparable rate than Bruehl.

12.     In fact, when staff was reduced in February 2012, Henry and Chris Lewis received salary increases, while Bruehl and Brown did not.  Also, despite excellent review scores on Bruehl's annual performance reviews, Bruehl had not had a raise in over five (5) years by the time she was terminated.

13.     In June 2012, Bruehl was reassigned to work primarily on the mitigation aspects of capital cases, but she was concerned that this assignment was too much for one attorney and she expressed this concern to Henry.

14.     In late Summer 2012, Bruehl experienced a panic attack for the first time, and discussed it with Brown.  Bruehl believed that this was likely caused, in part, by the heavy workload Bruehl was handling, which continued into September where Bruehl would have to work through most weekends just to prepare for the different trials her clients were facing.

15.     Moreover, on September 29, 2012, the Saturday before the trial was set to begin for *State v. Bosse* ("*Bosse*"), Bruehl went to the emergency room for chest pains.  No serious medical condition was discovered, although she was encouraged to undergo a stress test with a cardiologist at some point.

16.    Bruehl also spent much of her time as the primary caretaker for her elderly, ill mother who has medical issues with dementia and blindness among other ailments.

17.    In September 2011, Bruehl was particularly dealing with several issues with the care of her mother, specifically considering whether to make alternative living arrangements for her due to her declining condition.

18.    As the *Bosse* trial began in October 2011, Bruehl did participate in the trial, but she was actually given the primary responsibility for carrying all the witness boxes, research and jury questionnaires.  She was also responsible for cleaning up counsel's table after each day of trial to the point that on one occasion, Judge Greg Dixon actually assisted Bruehl in carrying boxes out to the car because she received no help from her male counterparts.

19.    After the trial was over, Bruehl was physically, mentally and emotionally exhausted and took some time off for vacation.

20.    When she returned, she began work on *State v. Stoney Ward* ("*Ward*"). The case was essentially set for trial except for numerous fine details to arrange and complete.

21.    On the way to a hearing in *Ward* on November 26, 2012, Henry, Chris Lewis, Bobby Lewis and Bruehl were driving to Wewoka when the men began talking about the physical appearance of another woman with whom they worked, and they

5

discussed if they would like to have sex with her.  At one point, Bruehl said something like, "How would you like it if I talked about OSBI agents' dicks all the time?", and the conversation stopped.

22.    Also in the Ward case, Henry and Bobby Lewis went to talk to the Defendant at one point about a plea-agreement offer from the District Attorney's office. After Henry called Bruehl to let her know that he was not taking the deal, Bruehl began crying on the phone because she became emotional realizing that preparing for this case would likely delay Bruehl's efforts to take care of her mother and find appropriate care for her.

23.    Bruehl and Henry later discussed Bruehl's situation again in which Bruehl explained that the process of finding housing or care for her mother was emotional and upsetting.  He volunteered the advice that her that family comes first, that he and Bobby Lewis could take over in the *Ward* case, and that Bruehl should take off to care for her mother and get her into some appropriate housing.  He stated that Bruehl had plenty of annual leave to use, and that after she finds her mother a proper facility, she could join the *Ward* trial for the Second Stage.

24.    Bruehl did take some time to get her mother in appropriate housing, but also continued to do a little work and checked into the office to see if her assistance was needed in any way for the *Ward* case or other matters on which she was working.

6

25.     At one point, as she was in the office working on jury instructions for the case, she learned that the *Ward* trial had been continued.  Henry told her that the reason given the Judge in requesting the continuance was that Bruehl was not mentally able to try the case, and that more time was needed since Henry and Bobby Lewis were going to have to try the case.   When he learned that she was working on jury instructions for the case, he told her that she needed to leave the office because if Judge Butner found out she was not sick and was able to come to the office, Defendant would get in trouble.

26.     Henry further told the Court in asking for a continuance that Bruehl was physically and emotionally not able to proceed, that she was not able to work at that moment, and that Henry put her on forced leave to get herself straightened out.  He also stated that he did not know "how long Bruehl was going to be" and that he did not know what her condition was going to be going forward.  These statements were not completely truthful, and he had not had these similar discussions with Bruehl prior to making these statements to the Court.

27.     Bruehl attempted to reach Henry by phone several times over the next few days into early December 2012 to discuss her employment, after the conversation regarding the continuance, but such attempts were not returned.

28.     Concerned that she was being terminated, Bruehl contacted Joe Robertson ("Robertson"), Defendant's Executive Director, to discuss her employment

and whether she was being terminated. Robertson told her that it was his understanding that Bruehl was not ready to try the Ward case, but had no answers for her regarding her continued employment.

29.     Soon after contacting Robertson, Henry finally called Bruehl, and she discussed her efforts in helping her mother.

30.     On December 4, 2012, Bruehl came into the office to check e-mail and was greeted by Milus who said he was sorry to hear that she was sick. Bruehl responded that she was not sick and there was nothing wrong with her.

31.     On December 6, 2012, Bruehl came into the office again and was told that Angie Cole ("Cole"), the Assistant to the Executive Director and Defendant's Personnel/AA/EEO Officer, wanted to see her. Cole and Craig Sutter ("Sutter"), the Deputy Executive Director, entered Bruehl's office a short time later and handed her a termination letter. They told her that she had the option of resigning or being terminated. Bruehl chose to resign under this threat of termination.

32.     Based upon information and belief, Bruehl believes that, in the days following her termination, Henry was telling others that Bruehl was terminated because she told him she could not try the Ward case and that she kept coming into the office although she had been placed on administrative leave. Bruehl also learned that Henry had told people that Bruehl had a mental breakdown.

8

33.     Bruehl filed her Charge of Discrimination with the United States Equal Employment Opportunity Commission on May 28, 2013, and received a Notice of Suit Rights on July 17, 2013. Bruehl has timely brought this action.

## FIRST CAUSE OF ACTION – VIOLATION OF THE OKLAHOMA DISCRIMINATION IN EMPLOYMENT ACT, 25 O.S. § 1350

34.     Plaintiff incorporates by reference Paragraphs 1 through 33 as though set forth in full herein.

35.     This claim is brought and jurisdiction lies pursuant to Oklahoma's Discrimination in Employment statute, 25 O.S. § 1350. Plaintiff alleges discrimination based on disability, and has filed a charge of discrimination in employment with the EEOC within one hundred eighty (180) days from her termination.

36.     Defendant perceived that Bruehl had a mental and emotional breakdown, or some similar type of mental health issue, and wrongly believed that Bruehl could not perform her work as an attorney representing indigent defendants in criminal cases. It was even expressed to a district judge, on the record, that Bruehl had an emotional breakdown and was mentally not able to proceed in the case, and that he did not know how long Bruehl "was going to be" and what her condition was going to be.

37.     Defendant regarded Bruehl as being disabled to such an extent that it believed that she could not perform the essential functions of her job, and terminated her employment as a result of this belief.

9

38.     As a direct and proximate result of Defendant's aforementioned wrongful conduct, Bruehl has sustained economic loss in backpay.  Bruehl has also suffered embarrassment, humiliation, mental and emotional distress and discomfort, and loss of enjoyment of life, all to her detriment and damage in amounts in excess of $75,000.00.

WHEREFORE, Plaintiff demands judgment against Defendants:

(1)     That judgment be entered declaring that Bruehl was unlawfully discriminated against by Defendant in violation of the Oklahoma Discrimination in Employment Act.

(2)     That Defendant be ordered to make Bruehl whole by providing back pay and an additional amount as liquidated damages as allowed by statute;

(3)     That Bruehl be awarded her costs and expenses of this litigation including reasonable attorney's fees and expert witness fees; and,

(4)     That Bruehl be granted such legal and equitable relief as the Court may deem just and proper.

## SECOND CAUSE OF ACTION – GENDER DISCRIMINATION IN VIOLATION OF TITLE VII AND THE OKLAHOMA DISCRIMINATION IN EMPLOYMENT ACT

38.     Plaintiff incorporates by reference herein Paragraphs 1 through 37 as though set forth in full.

39.     Plaintiff is in the protected Title VII class of gender as a female.

40.     Based on Plaintiff's education, experience and job performance, Plaintiff was qualified to serve as an attorney working in the Capital Trial Division for Defendant's Norman office.

10

41.     Plaintiff's gender was a significant factor in Defendant's termination of Defendant. Bruehl was treated differently, and with less respect, than other male staff members, and experienced comments directed derogatorily towards female employees as set forth herein.

42.     As a direct result of Defendant's discriminatory treatment of Plaintiff as herein alleged, Plaintiff has suffered economic loss, mental anguish and emotional distress, sleeplessness, anxiety, embarrassment, humiliation, injury to reputation, and loss of enjoyment of life, all to her damage in a sum in excess of Seventy-Five Thousand Dollars ($75,000.00).

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

(1)     That Defendant be ordered to make Plaintiff whole by providing all remedies and relief authorized by 42 U.S.C. § 2000e-5(g);

(2)     That Defendant be ordered to pay Plaintiff economic and non-economic damages pursuant to 42 U.S.C. § 1981a in an amount to be determined by the jury at the time of trial;

(3)     That judgment be entered declaring that Bruehl was unlawfully discriminated against by Defendant in violation of the Oklahoma Discrimination in Employment Act.

(4)     That Defendant be ordered to make Bruehl whole by providing back pay and an additional amount as liquidated damages as allowed by statute;

(5)     That Defendant be ordered to pay Plaintiff's costs including expert witness fees and a reasonable attorney's fee pursuant to 42 U.S.C. § 2000e-5(k); and,

(4)     For such other and further make-whole relief that the Court deems
        just and proper.

**THIRD CAUSE OF ACTION – VIOLATION OF EQUAL PAY ACT**

43.     Plaintiff incorporates by reference herein Paragraphs 1 through 42 as set
forth in full.

44.     Defendant, at all relevant times was and now is an "employer" as defined
by the Fair Labor Standards Act and specifically by 29 U.S.C.§ 203(d).

45.     From the date Plaintiff started her employment with Defendant until her
termination, she performed the same job duties and responsibilities as did the male
attorneys working for Defendant.

46.     At various times while Plaintiff served as an attorney, Defendant paid
Plaintiff less salary and benefits than it paid its male attorneys who were performing
work that was equal to the work performed by Plaintiff.

47.     The work performed by Plaintiff required equal skill, effort, and
responsibility to that performed by the male attorneys, and Plaintiff performed her
work under similar conditions to that performed by the male attorneys with Defendant.

48.     The difference in the rate of pay to Plaintiff and the male attorneys
similarly situated was not a part of, and was not occasioned by any seniority, merit, or
other non-discriminatory factors, but was based solely on the factor of gender.

12

49.     As a direct result of Defendant's unlawful action in violation of the provisions of the Equal Pay Act, Plaintiff has been damaged and seeks all the remedies provided by that Act to make her whole and to compensate her for all her losses for the time period covered under applicable law and within the limitations period, including but not limited to, the recovery of wages equal to the difference between Plaintiff's pay and benefits and the pay and benefits of the male directors, and for liquidated damages in an amount equal to the amount awarded as back pay wages.

50.     Plaintiff further seeks an award of attorney's fees as provided by the Act.

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

(1)     For all the relief allowed by the Equal Pay Act including the recovery of wages equal to the difference between Plaintiff's pay and benefits and the pay and benefits of Defendant's male attorneys in its and for liquidated damages in an amount equal to the amount awarded as back pay wages as liquidated damages;

(2)     For her costs;

(3)     For a reasonable attorney's fee; and,

(4)     For such other and further relief as the Court deems just, proper, and consistent with Plaintiff's claim under the Equal Pay Act.

## FOURTH CAUSE OF ACTION –VIOLATION OF FMLA

51.     Plaintiff incorporates by reference herein Paragraphs 1 through 50 as though set forth in full.

13

52.    The Family Medical Leave Act ("FMLA") entitles eligible employees of covered employers to take unpaid, job-protected leave for specified family and medical reasons with continuation of group health insurance coverage under the same terms and conditions as if the employee had not taken leave.

53.    It also prohibits termination against those employees who utilize such leave for specified family and medical reasons.

54.    Bruehl is an eligible employee because she worked for a covered employer, worked 1,250 hours during the twelve (12) months prior to her termination, worked at a location where the employer has 50 or more employees within 75 miles, and worked for Defendant for twelve (12) months.

55.    Defendant is a covered employer as a State employer.

56.    As an eligible employee, Bruehl was entitled to twelve (12) workweeks of leave for the care of her parent who had a serious health condition.

57.    Moreover, because Defendant regarded Bruehl has having a serious health condition that made her unable to perform the essential functions of her job, Defendant also should have offered Bruehl twelve (12) workweeks of leave to deal with this perceived health condition

58.    Defendant failed to notify Bruehl whether she was eligible to take FMLA leave within five (5) business days of Henry informing Bruehl to take time off for a potentially FMLA-qualifying reason.

14

59.   Plaintiff suffered an adverse employment action at the hands of Defendant in she was terminated from her position while she was out on leave which should have been afforded to her under the FMLA.

60.   There is a causal connection between Plaintiff's termination and her need to engage in the protected rights to which she was entitled under the FMLA.

61.   As a direct and proximate result of Plaintiff's discharge of employment, Plaintiff has suffered economic loss, mental anguish and emotional distress, sleeplessness, anxiety, humiliation, embarrassment, injury to reputation, and lost enjoyment of life, all to her damage in a sum in excess of Seventy-Five Thousand Dollars ($75,000.00).

WHEREFORE, Plaintiff respectfully requests this Court to grant the following relief:

(1)   Award Plaintiff damages against Defendant in an amount equal to any wages, salary, employment benefits, and other compensation denied or lost to plaintiff by reason of the violation of the statute;

(2)   Award Plaintiff interest on the amount of any wages, salary, employment benefits and other compensation denied or lost to Plaintiff by reason of the violation of the statute;

(3)   Award Plaintiff such equitable relief as may be appropriate, including employment, reinstatement, and promotion;

(4)   Award Plaintiff reasonable attorney's fees, reasonable expert witness fees, and other costs of this action;

(5)   Grant Plaintiff such other and further relief as the Court deems appropriate under the circumstances.

WARD & GLASS, L.L.P.

Stanley M. Ward, OBA#9351
Woodrow K. Glass, OBA#15690
Scott F. Brockman, OBA#19416
R. Ben Houston, OBA#14751
Barrett T. Bowers, OBA#30493
1821 E. Imhoff Road
Norman, Oklahoma 73071
(405) 360-9700
(405) 360-7902 (fax)
ATTORNEYS FOR PLAINTIFF

ATTORNEYS' LIEN CLAIMED